IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| ROBERT H. CROWE and <br> EMMA C. CROWE <br><br> Plaintiffs, <br><br> v. <br><br> BELLSOUTH <br> TELECOMMUNICATIONS Inc., and <br> STAR CONSTRUCTION, LLC. <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )  CIVIL ACTION NO.: 3:08cv179WC <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

# MEMORANDUM OPINION

Plaintiffs Robert H. Crowe and Emma C. Crowe[1] bring this cause of action as a single count of trespass against Defendants BellSouth Telecommunications, Inc. ("BellSouth"), and Star Construction, LLC ("Star"). This matter was tried before the Court on August 10 and 11, 2009.

**I.     JURISDICTION AND VENUE**

Pursuant to 28 U.S.C. § 636(c), both parties consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pls.' Consent to Jurisdiction (Doc. #15); Defs' Consent to Jurisdiction (Doc. #16).

The Court exercises jurisdiction over this action pursuant to 28 U.S.C. § 1332 (diversity) and 28 U.S.C. § 1441(a) (removal jurisdiction). The parties do not contest

---

[1] As Plaintiff Emma C. Crowe is now deceased the Court will refer to Plaintiff in the singular form throughout this opinion.

personal jurisdiction or venue, and the Court finds allegations sufficient to support both.

## II.     FINDINGS OF FACT AND CONCLUSIONS OF LAW

Having heard the evidence and considered the arguments of counsel, the Court makes the following findings of fact and conclusions of law.

### A.    Findings of Fact

This case stems from Defendants' cutting of cedar trees on Plaintiff's property. The trees sit in a row along an approximate sixteen-hundred-foot strip of land that is part of a larger, 85 acre tract of land owned by Plaintiff. Plaintiff planted the trees along the northern border of his property line approximately twenty-eight years ago. The northern border of Plaintiff's property is adjacent to a public right-of-way and Plaintiff said he planted the trees for the purpose of privacy. Within the public right-of-way, and within a few feet of Plaintiff's property, stand telephone poles holding telephone wires, which were erected prior to Plaintiff's planting of the cedar trees. Over time, the cedar trees grew into the telephone lines, causing damage.

In 2006, BellSouth contracted with Star to maintain and repair the lines. In repair and maintenance of the lines, Star cut branches and "topped"[2] the cedar trees. Of the approximately one-hundred-sixty cedar trees located on the property line, between forty-

---

[2] The term "topped," as used at trial and in this opinion, refers to the top of the tree being cut-off.

three[3] and sixty[4] cedar trees were located north of Plaintiff's property line and in the public right-of-way. Defendants entered Plaintiff's property in order to top the trees. BellSouth, and Star did not seek permission from Plaintiff prior to entering his property.

Prior to trial, the Parties entered into the following stipulations:

> Plaintiff Robert H. Crowe owns the land upon which some of the trees at issue are located. The only other land at issue is the right of way.
>
> That plaintiff Emma Crowe is now deceased.
>
> That the tree trimming at issue in this case occurred in December, 2006.
>
> That the telephone lines in the area at issue were replaced in March of 2007.
>
> That the tree trimming was performed by Anthony Edwards and his wife, Lynette Edwards. Both Mr. and Mrs. Edwards are employees of Star Construction and performed this work pursuant to a contract with BellSouth.
>
> The Plaintiff has never independently had this property appraised.
>
> That the telephone lines had been in this spot and on this land since the late 1970s.
>
> That the only claim before this Court is a claim of trespass.

*See* Stipulations of the Parties (Doc. #43).

In addition, the Court has taken judicial notice of § 37-1-49 Code of Alabama 1975, which states as follows:

---

[3] Plaintiff's expert land surveyor, Tim Simpson, testified that forty-three of the cedar trees sat north of Plaintiff's property line.

[4] Defendant's expert land surveyor, Glen Gaylor, testified that between fifty-nine and sixty cedar trees were located north of Plaintiff's property line.

> Every utility shall maintain its plant, facilities and equipment in good operating condition and shall set up and maintain proper reserves for renewals, replacements and reasonable contingencies. Every utility shall render adequate service to the public and shall make such reasonable improvements, extensions and enlargements of its plants, facilities and equipment as may be necessary to meet the growth and demand of the territory which it is under the duty to serve.

**B.     Conclusions of Law**

The first question the Court must resolve is whether Defendants trespassed on Plaintiff's property. "Trespass is a wrong against the right of possession." *Jefferies v. Bush*, 608 So. 2d 361, 362 (Ala. 1992). "Intrusion upon land possessed by a plaintiff, without his consent, is an essential element of trespass *quare clausum fregit*." *Harding v. Bethesda Reg'l Cancer Treatment Ctr.*, 551 So. 2d 299, 301 (Ala. 1989).

The uncontradicted evidence presented by both Plaintiff and Defendants established that Defendants entered Plaintiff's property without permission to top the cedar trees. Plaintiff testified that he was never asked, nor gave, permission for Defendants to enter his property. Defendants' employees and experts each testified that Plaintiff's land was entered and that permission to enter had not been sought, nor given, by Plaintiff. Accordingly, the Court finds that Defendants trespassed onto Plaintiff's property.

Having found a trespass was committed, the Court turns its attention to Plaintiff's claims for damages. Plaintiff requested the Court impose both compensatory and punitive damages. Defendants argued that any compensatory damages due Plaintiff are minimal and punitive damages are not appropriate.

4

"The measure of damages for trespass to land and cutting of trees is the difference between the value of the land immediately before the trespass and the value of the land after the trespass." *Loper v. Odom*, 619 So. 2d 1310, 1312 (Ala. 1993); *see also Ryals v. Hunter*, 638 So. 2d 2 (Ala. Civ. App. 1994) ("The legal measure of damages to real estate in cases [involving trespass and the cutting of trees,] such as the present case[,] is the difference between the value of the land immediately before the trespass and the value of the land immediately after the trespass."); *Hogan v. Alabama Power Co.*, 351 So.2d 1378, 1381-82 (Ala. Civ. App. 1977) ("The measure of damages for trespass to land when trees have been cut is the difference between the value of the land immediately before the trespass, *i.e.* the cutting, and its value immediately after.").

Further, in order to establish damages, "a landowner can testify as to the value of his property, even if he is not an expert." *Seale v. Pearson*, 736 So. 2d 1108, 1112-13 (Ala. Civ. App. 1999) (internal quotations omitted); *see also Kerns v. Pro-Foam of South Alabama, Inc.*, 572 F. Supp. 2d 1303, 1307 (S.D. Ala. 2007) ("[t]he general rule is that an owner of real estate is competent to testify as to its value.") (quoting *Alabama Power Co. v. Cummings*, 466 So. 2d 99, 102-03 (Ala. 1985)); *S.S. Steele & Co., Inc. v. Pugh*, 473 So. 2d 978 (Ala. 1985); *Wilkens v. Kaufman*, 615 So. 2d 613, 615 (Ala. Civ. App. 1992) ("A person may testify to the value of his or her land, even if that person is not an expert."); *Carson v. Canales*, 409 So. 2d 842, 843 (Ala. Civ. App. 1981) (trial court relied on plaintiff's testimony that market value of his house had fallen from $58,000 to $50,000 or $51,000 because of

cracked walls, sagging kitchen floor, and chimney that smoked through walls).

Plaintiff testified at trial that he estimated his land to be worth approximately $885,000 before the trespass and that the value of the land diminished between $75,000 and $150,000 immediately after the trespass. Defendants offered the Russell County Tax Assessment records as evidence of the value of the land before and after the trespass.

The Court does not find either of these estimates of damages to be reliable. The Court does not find the tax assessor records to be sufficiently reliable in determining the value of Plaintiff's property, because the proper measure of damages to real property is the diminution of the fair market value of the property, *see, e.g., Poffenbarger v. Merit Energy Co.*, 972 So. 2d 792 (Ala. 2007), and Defendants failed to show that the tax assessment records evidenced fair market value.

Likewise, Plaintiff's testimony as to the value of his land was also unreliable. As stated above, Plaintiff testified that his property was worth approximately $885,000 before the trespass and that the value of the land diminished between $75,000 and $150,000 immediately after the trespass.

> It is true that an award of damages cannot be based upon speculation. However, [Plaintiff] does not have to prove loss or damage to a mathematical certainty or measure [damages] by a money standard. Rather, he must produce evidence tending to show the extent of the damage or loss he has suffered, and thus the proper amount of damages, as a matter of just and reasonable inference.

*Seale*, 736 So. 2d at 1112-13 (internal citations and quotations omitted). While Plaintiff did not provide evidentiary support for the monetary value of his land, he did provide the Court

6

with evidence tending to show the extent of the damage he suffered, which allowed this Court to make a just inference. Plaintiff testified that his land was more valuable than comparable land in the surrounding area because of the timber on the land and his improvements to the land. Thus, Plaintiff estimated the value of his land to be approximately $10,411.76 per acre ($885,000 ÷ 85acres).[5]

The evidence at trial showed that the area affected by the trespass was approximately 1600 feet in length. Both surveyors testified that the width of the affected area did not exceed three feet. Thus, using the physical numbers provided by Plaintiff, the total affected area amounted to 4800 square feet of land (1,600 length x 3 width). The Court takes judicial notice that there are 43,560 square feet in an acre and that 4800 square feet represents 0.110193 of an acre. Assuming a value of $10,411.76 per acre, damages would equate to $1,147.30. While the Court recognizes that the exact valuation of land cannot be measured by such formulas, the Court does find it useful in evaluating Plaintiff's claim for damages.

Put another way, for Plaintiff's measure of damages to be accurate, the Court would have to believe that the loss of the tops of the cedar trees along the 1600 foot strip of land would have to account for approximately 17% of the total value of Plaintiff's land. Yet, Plaintiff testified that his 85 acres were more valuable than other surrounding areas because it was a Treasure Forrest, that included some 70,000 trees, including some rare species. Further, by Plaintiff's surveyor's count, at least 43 of the topped trees were located on the

---

[5] Plaintiff estimated land in the surrounding area to be worth approximately $5,000 per acre.

right-of-way.

The Court notes that property values can be affected by things such as "curb appeal" and that these trees sit along the edge of Plaintiff's property. However, there are rows of Virginia Pine trees directly behind the cedars. Thus, taking all of the testimony and evidence submitted as to the value of Plaintiff's property and location of the damage on the property, the Court finds Plaintiff suffered a $2,294.60 diminution in the value of his land immediately following the trespass.[6]

Plaintiff also requested this Court award him damages on the basis that he was made to suffer mental anguish and emotional distress as the result of the trespass. Under Alabama law, "[u]nless the trespass is attended with words or acts of insult or contumely, damages for mental anguish are not recoverable." *Jefferies v. Bush*, 608 So. 2d 361, 363 (Ala. 1992). There was no evidence that the trespass in this case was attended with words or acts of insult or contumely. Indeed, all of the evidence presented in this case was that Defendants intended to maintain the telephone lines in a manner consistent with their mandate to do so under § 37-1-49 Code of Alabama 1975. The trespass took place as a result of their efforts to repair and maintain the lines.

In addition, the Court finds that Plaintiff failed to establish that he suffered any mental anguish and/or emotional distress. Plaintiff testified that he, as a certified arborist and

---

[6] This amount represents double the amount Plaintiff testified his land was worth per acre and an amount significantly above what the Plaintiff testified was the average value of land in the surrounding area.

8

registered forester, places a special, and greater than average, significance on his trees. However, Plaintiff planted the cedar trees after the telephone lines had been in place, and at least 43 of the cedars trees were not even properly planted on Plaintiff's property. Plaintiff, as a certified arborist and registered forester would have known that the cedar trees would grow and extend out and interfere with the telephone lines. It appears that Plaintiff's feelings for the trees were not so strong as to require that he properly maintain and trim the trees in a manner to avoid interference with the neighboring telephone lines and the necessary pruning by Defendants.[7]  Although Plaintiff testified that he suffered mental anguish and emotional distress, he presented no evidence in support of such suffering and the Court finds that he failed to establish this claim.

Finally, Plaintiff has requested this Court award punitive damages. Punitive damages are warranted "in the case of trespass if the trespass is attended by rudeness, wantonness, recklessness or an insulting manner or is accompanied by circumstances of fraud and malice, oppression, aggravation, or gross negligence." *Rushing v. Hooper-McDonald, Inc.*, 300 So. 2d 94, 98 (Ala. 1974). Plaintiff argued that the trespass was willful and intentional and perpetrated in a rude, wanton, reckless, and insulting manner. However, as stated above, there is no evidence the trespass was committed in a manner other than mistake. This is not

---

[7] Eddie Miller, BellSouth's design engineer, testified that when he visited the site to determine how to repair and maintain the lines, he saw tree branches, dead limbs, and even dead trees lying on the telephone cable. Leh Bass, Defendant's retained Arboriculture expert testified that he saw two dead trees that had never been topped.

a case where the property owner denied the utility company entry onto his land.[8] Anthony Edwards, the Star Construction employee who performed the tree topping, testified that the BellSouth work order indicated that no permission was needed to enter the property. There is no evidence to suggest that the work order was produced in wrongful manner.[9]

Further, to show wanton trespass, Plaintiff would have to show "the mere knowledge on the part of the defendant of his invasion of the plaintiff's rights." *Cummans v. Dobbins*, 575 So. 2d 81, 82 (Ala. 1991). As stated above, Defendants mistakenly believed that they had permission to enter Plaintiff's property to top the trees. Plaintiff has only asserted that Defendants should have known they were trespassing because of the fence located on the property line, or should have sought permission from Plaintiff prior to the trimming. While the Court agrees and certainly has ruled in Plaintiff's favor regarding the trespass, the record is devoid of evidence that Defendants knew a trespass was being committed, especially here, where Star's employee believed permission to enter Plaintiff's land have been given.

The Court also rejects Plaintiff's attempt to establish that he is entitled to punitive damages because of the manner in which the trees were cut. While there may be a disagreement as to the

---

[8] *See, e.g., Hogan v. Alabama Power Co.*, 351 So. 2d 1378, 1382 (Ala. Civ. App. 1977) (finding punitive damages could be supported where defendant's employee knew permission to enter land had been withheld by landowner).

[9] Mitchell Smith, an employee of BellSouth testified that it was a deviation from the normal company policy to not seek permission to enter private property and that permission was normally sought by by the design engineer. However, Plaintiff failed to show that the design engineer's failure to seek permission, or to properly indicate that permission had not been given, was anything more than an oversight or mistake.

best way to prune the cedar trees, Defendants did establish that topping was a manner used by the industry. While Plaintiff may not have agreed that topping was a proper way to trim the trees, he failed to establish that the choice of topping was done in a rude, wanton, reckless, or insulting manner.

Accordingly, the Court does not find Plaintiff is entitled to an award of punitive damages.

### III.   CONCLUSION

Based on the foregoing, the Court finds in favor of Plaintiffs and against Defendants. A judgment consistent with this opinion will be entered.

Done this 2nd day of October, 2009.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE